FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 APR 14  PH 3: 26

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH A. GILBERT, KEVIN M. GILBERT KEVIN SCALES, LOUIS RIVARD, II and TIGER TRANSPORTATION, LLC | * | CIVIL ACTION |
| | * | NUMBER: |
| VERSUS | * | SECTION: **05-1428** |
| BRIAN BERMAN, MATTHEW BATAILLE, GATORLAND LOGISTICS, LLC, GATORLAND TRANSPORTATION, LLC and S.WHITE TRANSPORTATION, INC. | * | JUDGE |
| | * | MAGISTRATE |
| | * | SECT. C MAG. 1 |

*******************************************

## COMPLAINT FOR DAMAGES PURSUANT TO TRUTH-IN-LEASING FEDERAL REGULATIONS, RICO AND UNDER LOUISIANA LAW THROUGH SUPPLEMENTAL JURISDICTION

**NOW INTO COURT**, through undersigned counsel, come Joseph A. Gilbert, Kevin M.

Gilbert, Kevin Scales, Louis Rivard, II and Tiger Transportation, LLC (collectively "Owner-

Operator plaintiffs") having suffered severe economic loss as a result of Defendants' substantial

and material failure to comply with federal regulations and Louisiana state law bring this action

seeking declaratory and monetary relief and an accounting against Defendants Brian Berman,

Matthew Bataille, Gatorland Logistics, LLC, Gatorland Transportation, LLC and S. White

Transportation, Inc., their agents, affiliates, or successors in interest, and allege as follows:

Fee $250 00
Process_____
Dktd_____
CtRmDep_____
Doc. No_____

1

## NATURE OF THE ACTION

1.      Defendants Gatorland Logistics, LLC, ("GL") Gatorland Transportation, LLC ("GT") and S. White Transportation, Inc. ("SWT") are regulated motor carriers that provide transportation of property in interstate commerce under authority issued by the U.S. Department of Transportation, ("DOT").   Defendants transport property and equipment leased from independent truckers (known as "Owner-Operators").   Under federal law and regulation, "authorized motor carriers" such as defendants may perform authorized transportation in equipment that they do not own only if the equipment is covered by a written lease that meets the requirements set forth in 49 C.F.R. Part 376 (the "Truth-In-Leasing" regulations). *See* 49 C.F.R. § 376.11(a).  Authorized motor carriers are required by regulation to follow the required lease provisions.  49 C.F.R. § 376.12.  Violations of the federal regulations are privately actionable under 49 U.S.C. § 14102 and 14704 (a)(1) and (a)(2). Defendants Brian Berman and Matthew Bataille are the managers and/or owners of GL, SWT and GT, and at all material times, have a financial interest in each corporation.

2.      Defendants have substantially and materially failed to comply with the Truth-In-Leasing regulations and have conducted themselves in such a manner as to cause Owner-Operator plaintiffs to suffer severe economic losses.

a.      Defendants' lease agreements substantially and materially violate the Truth-in-Leasing regulations in that numerous material provisions required by Congress and the DOT (and its predecessor the Interstate Commerce Commission) are missing and/or lack the specificity necessary to describe accounting provisions for charge backs and other reductions to the revenue earned by Owner-Operator plaintiffs.

2

b. Defendants' business practices, including some not specifically addressed by its lease agreements, substantially and materially violate the practices prescribed by Congress and the DOT under the Truth-In-Leasing regulations and under Louisiana law.

c. Defendants' intentional misconduct, including unauthorized mark-ups and double brokering of Owner-Operator plaintiffs' equipment and drivers for the benefit of its enterprise through numerous transactions between May and February 2004 drastically reduced revenue, and constitutes fraud and theft affecting interstate commerce, contrary to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* and 15 U.S.C. § 15(b).

d. Defendants' business practices violate trust obligations imposed by federal and state law.

e. Defendants failed to properly account for charge back items and intentionally marked up costs to reduce revenue earned by Owner-Operator plaintiffs under lease agreements governed by the DOT and Truth-In-Leasing regulations. Thus, defendants are required to provide Owner-Operator plaintiffs with an accounting of all items pursuant to federal regulations and as set forth in these lease agreements.

f. Defendants Berman and Bataille acted in such a manner as to cause a deliberate interference with and intentional breach of Owner-Operator plaintiffs' lease agreements causing additional economic injury.

g. Under Louisiana law, defendants' actions constitute fraud, tortious interference with business relations, intentional breach of contract, and violate the Louisiana Unfair Trade Practices Act ("LUTPA").

3

3.     Under Louisiana and federal law, defendants have been unjustly enriched and ignored the proper form for leasing contracts and have profited from the illegal conduct of purportedly separate corporate entities.   Accordingly, defendants should be held jointly and severally liable for the damages suffered by plaintiffs.

### JURISDICTION AND VENUE

4.     This action arises under 49 U.S.C, §§ 14102 and 14704, *et seq.* and 49 C.F.R. Part 376, *et seq.* for violation of the federal statutes and regulations governing the terms and conditions by which truck owner-operators lease equipment to authorized motor carriers for the transport of property.

5.     Defendants misconduct, including multiple acts of fraud, mail fraud, and theft of revenue earned by Owner-Operator plaintiffs and misappropriation of equipment and drivers to benefit a commercial enterprise controlled by Berman and Bataille also creates a federal cause of action under RICO, 18 U.S.C. § 1961, *et seq.* and 15 U.S.C.  § 15(b).

6.     Jurisdiction of this mater is granted to this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and § 1337 (proceedings arising under an act of Congress regulating commerce).   Specifically, the causes of action alleged herein arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce, including 49 U.S.C. §§ 13501, 14102 and 14704(a)(1) and (2), and 49 C.F.R. § 376 *et seq.*, and RICO, 18 U.S.C. § 1961, *et seq.* and 15 US.C. § 1516. Supplemental jurisdiction for claims under Louisiana law is granted to this Court by 28 U.S.C. § 1367.

4

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) in that defendant, GT maintains a place of business in the State of Louisiana while the remaining defendants are residents of Louisiana and/or are authorized to do business in the State of Louisiana, and the execution of the lease at issue and illegal acts of fraud and theft of trucking revenue occurred within the State of Louisiana.

### PARTIES TO THIS ACTION

8.      Joseph A. Gilbert is a resident of the State of Louisiana and is an owner-operator who entered into a lease agreement with SWT that is subject to regulation under 49 U.S.C. § 14704.

9.      Kevin M. Gilbert is a resident of the State of Louisiana and is an owner-operator who entered into a lease agreement with SWT that is subject to regulation under 49 U.S.C. § 14704.

10.     Kevin Scales is a resident of the State of Louisiana and is an owner-operator who entered into a lease agreement with SWT that is subject to regulation under 49 U.S.C. § 14704.

11.     Louis Rivard, II is a resident of the State of Louisiana and is an owner-operator who entered into a lease agreement with SWT that is subject to regulation under 49 U.S.C. § 14704.

12.     Tiger Transportation, LLC is a corporation domiciled in the State of Louisiana, who entered into a lease agreement with SWT that is subject to regulation under 49 U.S.C. § 14704.

13.     S. White Transportation, Inc. ("SWT") with ICC MC No. 361257 is an authorized carrier and Mississippi corporation that operates within the Eastern District of Louisiana.  SWT entered leases for the use of seven (7) vehicles provided by Owner-Operator plaintiffs.

14.     Gatorland Logistics, LLC ("GL") is an authorized carrier and Louisiana corporation that operates within the Eastern District of Louisiana, and benefited from the misappropriation of vehicles and drivers provided by Owner-Operator plaintiffs under the lease with SWT.

15.     Gatorland Transportation, LLC ("GT") is an authorized carrier and Mississippi corporation that operates within the Eastern District of Louisiana and benefited from the misappropriation of vehicles and drivers provided by Owner-Operator plaintiffs.

16.     Brian E. Berman is a manager/owner of GL, GT, and SWT and a resident of the State of Louisiana, who also at all material times had a financial interest in these corporations and represented to Owner-Operator plaintiffs that he was involved in the land-based trucking business.  As a result, Berman benefited and directed the misappropriation of vehicles and drivers provided by Owner-Operator plaintiffs.

17.     Matthew Bataille is a manager/owner of GL, GT, and SWT and a resident of either the State of Louisiana or Mississippi, who also at all material times had a financial interest in these corporations and represented to Owner-Operator plaintiffs that he was in the land-based trucking business.  As a result, Bataille benefited and directed the misappropriation of vehicles and drivers provided by Owner-Operator plaintiffs.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

18.     In May, 2004, Berman and Bataille, on behalf of GL, GT and SWT, first introduced themselves to Owner-Operator plaintiffs and informed them that they operated trucking businesses in Louisiana and Mississippi with customers that required leased trucks for land-based trucking operations throughout the United States and within the Eastern District of Louisiana.

19.     Based on the representation of Bataille and Berman, Owner-Operator plaintiffs entered into seven lease contracts calling for the use of seven trucks, all of which were governed by a standardized written lease agreement entitled "S. White Transportation, Inc. Owner/Operator Equipment Lease Contract", hereafter "the lease agreements."

20.     Owner-Operator plaintiffs executed the lease agreements in Louisiana on or about May 14, 2004 and pursuant to the lease agreement provided SWT with truck equipment and drivers to transport bulk commodities throughout the United States and the Eastern District of Louisiana.

21.     Pursuant to the lease agreements, Defendants, as carriers, were to provide Owner-Operator plaintiffs with settlement statements on a weekly basis that set forth any and all amounts deducted as costs and expenses.

22.     Pursuant to the lease agreements, any authorized repairs were to be at cost, and identified before any repair would take place.

23.     Pursuant to the lease agreements, SWT was obligated to obtain automobile liability insurance of an aggregate total limit of $1,000,000.00, bodily injury/property damage combined single limits, and motor truck cargo liability insurance in the amount of $100,000.00

7

naming Owner-Operator plaintiffs as an insured.  Further, SWT may deduct such payments made from amounts due to the Owner-Operator plaintiffs, but only in accordance with the trip settlement provisions, and after providing proper settlement statements.

24.     Pursuant to the lease agreements, SWT was obligated to pay Owner-Operator plaintiffs on a monthly basis.

25.     Pursuant to the lease agreements, Owner-Operator plaintiffs were entitled to 90% of the gross truck load revenue, less deductions, provided that they were included in the settlement statement.  Pursuant to the lease agreements, and federal law, defendants must provide Owner-Operator plaintiffs with settlement statements to review and approve any charge ups that reduced revenue on a weekly basis.

26.     Pursuant to the lease agreements, an escrow account in the amount of $1,000.00 was set up by defendants, authorizing deductions of $125.00 per week for eight weeks beginning August 1, 2004.  In the event a lease was terminated, the escrow account was to be refunded.

27.     Pursuant to the lease agreement, Owner-Operator plaintiffs provided the trucks identified in Schedule "A" and drivers as required beginning in May of 2004.

28.     At the direction of Berman and Bataille, the trucks were frequently misappropriated from SWT to GT and GL, and through fraud drastically reduced revenues earned by Owner-Operator plaintiffs.

29.     At the direction of Berman and Bataille, vehicles were repaired without authorization from Owner-Operator plaintiffs, and the cost of such repairs intentionally marked up and invoices forged to reduce revenues earned by Owner-Operator plaintiffs.

30.    At the direction of Berman and Bataille, other charges were intentionally and fraudulently marked up to avoid payment of revenues earned by Owner-Operator plaintiffs.

31.    Between May and January 2004, at the direction of Berman and Bataille, settlement statements were intentionally not provided on a weekly basis as required by the lease agreements so that additional fraudulent and/or unauthorized mark-ups could be added.  In this time period, only three statements were provided that included mark-ups and unsupported claims of repair work, which were not authorized by Owner-Operator plaintiffs, and the revenues earned remain disputed.

32.    Instead of receiving monthly payments, Owner-Operator plaintiffs have only been paid three times, minor amounts that remain in dispute because of the wrongful and deliberate misconduct of defendants as described herein.

33.    Despite repeated requests for additional paperwork and documentation to support these unauthorized charges, defendants have not provided any documents, including single load confirmation sheets.

34.    Owner-Operator plaintiffs have also been improperly charged various taxes which should have been owed and/or paid by defendants.

35.    Owner-Operator plaintiffs have also been charged improper demurrage.

36.    Berman and Bataille, as managers and/or operators of GT and GL with a financial interest in each corporation, have intentionally misappropriated the use of vehicles and drivers provided under the lease agreements for their personal profit and gain, without executing separate lease agreements for the use of this equipment as mandated by federal law.

37.    On a regular basis, Berman also improperly used the phone and wire services for funding before a load was delivered, and also forged invoices so that GL, SWT, and GT could receive payment before loads were picked up on their behalf.

38.    Berman also instructed his bookkeeper, Merilyn Sanderson, to pay his personal bills out of defendants' accounts.

39.    Berman and/or Bataille also intentionally funneled numerous transactions performed by Owner-Operator plaintiffs to GL, then GT, and SWT where each corporation took a cut of the revenues earned by Owner-Operator plaintiffs. This "double-brokering" reduced revenues earned by Owner-Operator plaintiffs, and contributed to the financial gain of the enterprise, consisting of SWT, GL and GT.

40.    In October, 2004, one of the vehicles was damaged and as directed by Berman and Bataille, no insurance claim was filed and instead the costs were assessed to Owner-Operator plaintiffs. On another occasion in February 2005, defendants wrongfully asserted a lien on a vehicle belonging to Owner-Operator plaintiffs based on unauthorized repairs and the misconduct described herein by defendants.

41.    At all times material, Owner-Operator plaintiffs met their obligations under the lease agreements.

## COUNT I

### Unlawful Provisions in the Lease Agreements Contrary to
### Truth-In-Leasing Regulations

42.    Plaintiffs re-allege and incorporate the allegations of Paragraphs 1-41 above.

43.    Under federal law, "an authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions...there shall be a written lease

granting the use of equipment and meeting the requirements contained in 49 C.F.R. § 376.12."

Defendants are engaged in the unlawful providing of transportation services and equipment that

they do not own because the lease between Owner-Operator plaintiffs and SWT fails to conform

to 49 C.F.R. Part 376.

(a) The lease agreements between SWT and Owner-Operator plaintiffs do not contain the

provisions required by 49 C.F.R. § 376.12.  By way of illustration and not limitation:

i.     The lease agreements do not clearly specify the responsibility of each party with respect to the cost of fuel, empty mileage, tolls, ferries, detention and accessorial services as required by 49 C.F.R. § 376.12(e).

ii.    The lease agreements do not recite the Owner-Operator's right to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed as required by 49 C.F.R. § 376.12(g).

iii.   The lease agreements do not adequately specify the charge backs made by defendants from Owner-Operator's compensation as required by 49 C.F.R. §376.12(h).

iv.    The lease agreements do not recite how all items deducted from Owner-Operator's compensation are to be computed as required by 49 C.F.R. § 376.12(h).

vii.   The lease agreements do not accurately disclose how costs incurred for fuel and other items are charged back against the compensation of Owner-Operators as required by 49 C.F.R. § 376.12(h).

viii.  The lease agreements do not clearly specify the condition under which deductions for cargo and property damage may be made from settlements in that they do not state that a written explanation and itemization must be delivered to the Owner-Operators before any deductions are made as required by 49 C.F.R. § 376.12(j)(3).

ix.    The lease agreements do not specify that while the escrow fund is under the control of a motor carrier, the motor carrier will provide an accounting to the Owner-Operators of the transactions involving

the fund under the conditions described in 49 C.F.R. §376.12(k)(3).

x.    The lease agreements do not specify that the Owner-Operator can demand to have an accounting for transactions involving the escrow at any time as required by 49 C.F.R. § 376.12(k)(4).

xi.   49 C.F.R. § 376.12(h) requires that "the lease clearly specifies all items that may be initially paid for by the authorized carrier, but ultimately deducted from compensation at the time of payment or settlement.

xii.  Paragraph 18 of the Lease Agreements directly violates this provision by asserting the rights of these regulated motor carriers to deduct "all costs and expenses" allegedly owed to them by Owner/Operator plaintiffs.

44.   Additionally, GL and GT did not execute any lease agreements with Owner-Operator plaintiffs and could not legally operate any of their respective equipment under 49 C.F.R. 376 and the Truth-In-Leasing Regulations.

45.   As a direct and proximate result of these substantial and material violations of federal and state law, the rights of Owner/Operator plaintiffs have been violated and they have suffered economic damages.

## COUNT II

### Violation of the Truth-In-Leasing Regulations by Defendants' misconduct.

46.   The Truth-In-Leasing Regulations mandate that lease agreements by motor carriers such as defendants contain certain provisions and that those lease provisions "be adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12.

47.   Defendants did not adhere to or perform the obligations established by 49 C.F.R. Part 376. By way of illustration and not limitation:

a.     Defendants have failed to provide Owner-Operator plaintiffs copies of those documents which are necessary to determine the validity of the charge-backs and all costs that have been used to reduce revenue in violation of 49 C.F.R. § 376.12(h);

b.     Defendants have required Owner-Operator plaintiffs to purchase insurance and other products as a condition to entering into lease agreements with them in violation of 49 C.F.R. § 376.12(i);

48.     Defendants intentionally misappropriated vehicles and drivers to further reduce revenues earned by Owner-Operator plaintiffs, and did not execute separate lease agreements as required by 49 C.F.R. § 376.

49.     Defendants failed to provide any documents supporting charges and expenses used to reduce revenue after numerous requests by Owner-Operator plaintiffs contrary to 49 C.F.R. § 376.

50.     Defendants failed to provide settlement statements as required by 49 C.F.R. § 376 and under the terms of the lease agreements.

51.     As a direct and proximate result of these violations of federal law, the rights of Owner-Operator plaintiffs have been violated and Owner-Operator plaintiffs have suffered damages.

## COUNT III

### Breach of Fiduciary Duty by All Defendants

52.     Plaintiffs re-allege and incorporate the allegations of Paragraphs 1-51 above.

53.     By collecting escrow monies from Owner-Operator plaintiffs under the terms and conditions of the Truth-In-Leasing Regulations, defendants assumed obligations as fiduciaries

and trustees.   The failure to observe the escrow requirements of the Truth-In-Leasing Regulations, the disposition of the escrow accounts, the failure to pay interest on such accounts and the failure to return escrow funds to Owner-Operator plaintiffs, among other things, constitutes a violation of defendants' fiduciary and trust duties.

54.    As a direct and proximate result of defendants' violation of the fiduciary duties to Owner-Operator plaintiffs, plaintiffs suffered losses and their rights have been violated.

### COUNT IV

### Tortuous Interference with Contract by GL, GT, Berman and Bataille

55.    Owner-Operator plaintiffs re-allege and incorporate the allegations of Paragraphs 1-54 above.

56.    The intentional mark-ups resulted in part from the misappropriation of vehicles provided by Owner-Operator plaintiffs to SWT, and improper transfer of the vehicles for use by GL and GT as directed by Berman and Bataille.

57.    Defendants' "double-brokering" of vehicles provided by Owner-Operator plaintiffs reduced revenue earned under the lease agreements between SWT and Owner-Operator plaintiffs.

60.    Berman, Bataille, GL and GT had knowledge of the existence of the lease agreements between Owner-Operator plaintiffs and SWT.

61.    Berman, Bataille, GT and GL acted intentionally and improperly to cause breach of the lease agreements between SWT and Owner-Operator plaintiffs.

14

62.     GL, GT, Berman and Bataille acted maliciously and improperly in causing the breach of lease agreements between Owner-Operator plaintiffs and SWT.

63.     The lease agreements between Owner-Operator plaintiffs and SWT were in fact breached as a result of the improper acts committed by Berman, Bataille, GL and GT.

64.     As a result of this conduct, Owner-Operator plaintiffs suffered damages.

## COUNT V

### Violation of RICO 18 U.S.C. § 1961, and 15 U.S.C. § 15(b)

65.     Owner-Operator plaintiffs re-allege and incorporate the allegations of Paragraphs 1 through 64 above.

66.     RICO, as contained in 18 U.S.C. § 1961, *et seq.* and 15 U.S.C. § 15(b), prohibits racketeering activity that includes embezzlement, fraud, and theft of revenues earned by Owner-Operator plaintiffs affecting commerce and interstate transportation.

67.     Defendants conspired to mark-up repair costs and intentionally reduced revenues earned by Owner-Operator plaintiffs contrary to 18 U.S.C. § 1961, *et seq.*

68.     Berman and/or Bataille as managers/operators of a commercial enterprise, consisting of carriers, SWT, GT, and GL, double brokered the vehicles and drivers provided by Owner-Operator plaintiffs, effectively stealing the equipment for defendants personal profit and gain.

69.     Berman and/or Bataille misappropriated the vehicles and drivers provided by Owner-Operator plaintiffs without their consent, and then directed the enterprise to overcharge Owner-Operator plaintiffs through unnecessary and fake repairs, and forged invoices, drastically reducing revenues earned by Owner-Operator plaintiffs, to the detrimental affect on interstate

commerce.  Berman and/or Bataille and/or the enterprise used the mail and telephone services for this fraudulent conduct.

70.     Berman and Bataille directed the intentional mark-ups and unauthorized charges over a period of several months and on numerous occasions between May and February 2004, and such "racketeering activity" affected interstate commerce. Specifically and as an example, three settlement statements describe unauthorized mark ups, and show that revenues earned were not properly calculated during this time period, all of which affected interstate transportation and commerce.  When Owner-Operator plaintiffs disputed these charges and sought an accounting, defendants refused.

71.     To further the financial benefit of the enterprise, Berman and Bataille also relied on the telephone and mail service to defraud Owner-Operator plaintiffs.

72.     As a result of this illegal activity, Owner-Operator plaintiffs suffered direct injury to their business and property, including their ability to engage in interstate trucking operations.

## COUNT VI

### Defendants are Jointly and Severally Liable

73.     Owner-Operator plaintiffs re-allege and incorporate the allegations of Paragraphs 1-72 above.

74.     Defendants, by operating vehicles provided by Owner-Operator plaintiffs without a separate contract between GT and GL, and by intentionally misappropriating the use of this equipment, ignored the separate requirements of each corporate entity involved with interstate commerce and deliberately failed to execute separate lease agreements with Owner-Operator plaintiffs contrary to federal law.  Through this misconduct, all defendants gained financially.

75.     Defendants also failed to return to Owner-Operator plaintiffs the balance of any funds held in escrow and through the misappropriation of equipment by "double brokering" and over charging violated federal law, including the regulatory and contractual requirements of the lease agreements.

76.     Defendants Berman, Bataille, GL and GT totally disregarded the contractual obligations between SWT and Owner-Operator plaintiffs.

77.     SWT totally disregarded the contractual obligations between it and Owner-Operator plaintiffs.

78.     By disregarding these federal regulations, all defendants were unjustly enriched because each entity had immediate access to a pool of drivers and equipment without regard to the contractual obligations existing between SWT and Owner-Operator plaintiffs and without regard to the regulatory obligations governing those contractual relations.

79.     Due to defendants' failure to observe the corporate formalities and structures and because defendants were enriched by ignoring such corporate formalities, and benefited and improperly reduced revenues earned by Owner-Operator plaintiffs, defendants should be held jointly and severally liable for the damages and other remedies sought in this Complaint.

### SUPPLEMENTAL CAUSES OF ACTION
### UNDER 28 U.S.C. § 1367

### COUNT VII

**Fraud and Tortious Interference with Business Relations**
**Contrary to Louisiana law**

80.     Owner-Operator plaintiffs re-allege and incorporate the allegations of Paragraphs 1-79 above.

81.     Berman and Bataille, by intentionally marking up costs that reduced revenues earned by Owner-Operator plaintiffs intentionally interfered with the business relations of Owner-Operator plaintiffs contrary to Louisiana law.

82.     All defendants realized that vehicles and drivers provided by Owner-Operator plaintiffs were misappropriated without proper authorization, and were involved in a scheme to double broker such services, which reduced revenues earned by Owner-Operator plaintiffs.

83.     Berman intentionally ordered that revenues earned by Owner-Operator plaintiffs be intentionally withheld until additional mark-ups and invoices were located, then either added or forged these invoices to reduce revenues earned by Owner-Operator plaintiffs.

84.     Defendants, through a scheme involving intentional mark-ups, obtained the vehicles without charge, and subsequently benefited from their misappropriation as each earned revenues while reducing those revenues earned by Owner-Operator plaintiffs.

85.     These intentional and malicious acts resulted in financial harm to Owner-Operator plaintiffs, and prevented them from engaging in other business transactions.

86.     Defendants earned substantial profits from such acts contrary to Louisiana Civil Code Articles 953, and Article 2315.

87.     Owner-Operator plaintiffs suffered economic damages as a result of this misconduct.

## COUNT VIII

### Bad Faith Breach of Contract

88.     Owner-Operator plaintiffs re-allege and incorporate the allegations of Paragraphs 1-87 above.

89.   Berman, Bataille as managers/operators of SWT, advised Owner-Operator plaintiffs that SWT was an authorized motor carrier.

90.   SWT and Owner-Operator plaintiffs entered into lease agreements.

91.   The lease agreements contain provisions describing obligations for the accounting of mark-ups and other charges which are set forth in detail above, and were breached by the misconduct of Defendants.

92.   Such actions, including but not limited to the failure to provide settlement statements and a description of charges, to provide an accounting of all charges that reduced revenues earned and to execute separate lease agreements where another corporate entity was involved, were deliberate, malicious and in bad faith and resulted in the breach of the lease agreements under Louisiana and federal law.

93.   Defendants were enriched by such misconduct contrary to Louisiana Civil Code Article 2298.

94.   Owner-Operator plaintiffs suffered economic injury as a direct result of defendants' misconduct, and are entitled to damages for bad faith breach of contract under Louisiana Civil Code Articles 1997, 1998 and 2298.

### COUNT IX

### Bad Faith

95.   Owner-Operator plaintiffs re-allege and incorporate the allegations of Paragraphs 1-94 above.

96.   Defendants' actions were not in good faith and contrary to Louisiana law and intentionally harmed plaintiffs.

19

## COUNT X

### Violations of LUTPA

97.   Plaintiffs re-allege and incorporate the allegations of Paragraphs 1-96 above.

98.   Defendants' misconduct violates the Louisiana Unfair Trade Practice Act ("LUTPA"), Louisiana Revised Statute Annotated §51:409, *et seq.* as such conduct was otherwise immoral, unethical, oppressive, unscrupulous and substantially injurious to Owner-Operator plaintiffs as those terms are defined under LUTPA.

99.   Defendants made material misrepresentations in connection with the above described acts.

100.   The above described acts constitute an unfair trade practice and intentionally interfered with Owner-Operator plaintiffs' ability to compete with defendants in the trucking business within the meaning of LUTPA.  The above described acts also intentionally interfered with Owner-Operator plaintiffs' ability to participate as a consumer in the trucking market and interstate commerce within the meaning of LUTPA.

101.   As a result of these willful violations of LUTPA, plaintiffs suffered severe economic damages, and accordingly plaintiffs are entitled to actual damages, treble damages, and attorney fees from the defendants in accordance with LUTPA.

## COUNT XI

### Accounting under Lease Agreement and Truth-In-Leasing Regulations

102.   Owner-Operator plaintiffs re-allege and incorporate Paragraphs 1-101 above.

103.   Owner-Operator plaintiffs request an accounting of all costs and monies earned as documented by single load confirmation sheets, as well as documentation to support all

repairs, taxes, charges for demurrage, and any other item that resulted in a deduction from the payments owed pursuant to the lease agreements, and under the Truth-In-Leasing regulations.

104.    Owner-Operator plaintiffs request an accounting of all revenues earned by defendants as required under federal and Louisiana law.

105.    Owner-Operator plaintiffs pray for a trial by jury.

### PRAYERS FOR RELIEF

**WHEREFORE**, Owner-Operator plaintiffs, Joseph A. Gilbert, Kevin M. Gilbert, Kevin Scales, Louis Rivard, II and Tiger Transportation, LLC, respectfully request this Court order an accounting of all charges that reduced revenues earned by Owner-Operator plaintiffs; an accounting of all revenues earned by defendants through the use of vehicles provided by Owner-Operator plaintiffs under Louisiana and federal law; award damages under federal and state law, including treble damages under RICO and the Louisiana Unfair Trade Practices Act; award attorney fees pursuant to federal and state law and the lease agreements; award interest, costs and, such other relief and damages as this Court may deem to be just and proper. Owner-Operator plaintiffs further pray for a trial by jury and that defendants be duly cited and served with a copy of this Complaint and after due proceedings be had, there be judgment in favor of Owner-Operator plaintiffs and against defendants.

Respectfully submitted,

**REICH, MEEKS & TREADAWAY, LLC**

**ROBERT S. REICH, T.A. (#11163)**
**JOHN S. GARNER (#25314)**
3850 North Causeway Boulevard
Suite 1000
Metairie, Louisiana 70002
Telephone: (504) 830-3999
Facsimile: (504) 830-3999
*Attorneys for Plaintiffs, Joseph A. Gilbert,*
*Kevin M. Gilbert, Kevin Scales, Louis Rivard, II*
*And Tiger Transportation, L.L.C.*

**PLEASE SERVE:**

**Brian Berman**
862 Tchoupitoulas Street
No. 3
New Orleans, Louisiana 70130

**S. White Transportation**
**Through its Registered Agent:**
12003 Old Highway 49
Gulfport, Mississippi 39503

**Gatorland Logistics, LLC**
**Gatorland Transportation, LLC**
**Through its Registered Agent:**
Brian Berman
862 Tchoupitoulas Street
No. 3
New Orleans, Louisiana 70130

**Matthew Bataille**
3601 Hawthorn Dr.
Jackson, Ms. 39216

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Joseph Gilbert, Kevin Gilbert, Kevin Scaler, Louis Duvard, T and L Legr Transportation, LLC

**DEFENDANTS** Brian Berman, Matthew Batalle, Gatorland Logistics Gatorland Transp. and S White Transportation

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)
JEFFERSON PARISH, LA

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
ROBERT S. REICH & JOHN S GARNIER (AOR)
Reich, Meeks & Treadaway
3850 N. Causeway Blvd
Suite 1100
Metairie, La 70002-830-3999

ATTORNEYS (IF KNOWN)

SECT C MAG 1

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury – Med. Malpractice
- ☐ 365 Personal Injury – Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☒ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS – Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

TRUTH IN LEASING ACT BETWEEN OWNER OPERATORS AND MOTOR CARRIERS AND GUIDELINES - 49 USC 14102 & 14704, & PURSUANT TO DEPT. OF TRANSPORTATION 46 CFR: 376. RACKSTEER INFLUENCED & CORRUPT ORGANIZATIONS ACT (RICO) 18 USC 1961

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ TBD & ACCOUNTING FOR FEDERAL REGS

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE _____ DOCKET NUMBER _____

SIGNATURE OF ATTORNEY OF RECORD
ROBERT S. REICH JOHN S GARNIER

DATE 4/14/05

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____